**MATERN LAW GROUP, PC**
MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
MATTHEW W. GORDON (SBN 267971)
mgordon@maternlawgroup.com
MAX N. SLOVES (SBN 217676)
msloves@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff DANNY LOPEZ, individually, and on behalf of other aggrieved employees

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DANNY LOPEZ, individually, and on behalf of other aggrieved employees

Plaintiff,

vs.

AIRCRAFT SERVICE INTERNATIONAL, INC., a corporation; AIR MENZIES INTERNATIONAL (USA), INC., a corporation; MENZIES AVIATION (USA), INC., a corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No. 2:21-cv-07108 DMG(Ex)

[Assigned to the Honorable Dolly M. Gee, Courtroom 8C]

**PLAINTIFF'S OPPOSITION TO AIRCRAFT SERVICE INTERNATIONAL, INC.'S AND MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION**

[*Concurrently Filed with Declaration of Danny Lopez*]

Date: August 19, 2022
Time: 9:30 a.m.
Ctrm.: 8C
Judge: Hon. Dolly M. Gee

Action Filed: July 21, 2021
Removed: September 2, 2021
Trial Date: July 25, 2023

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 6

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......... 7

III. ARGUMENT .......... 7

A. AS A FUEL TECHNICIAN, PLAINTIFF IS EXEMPT FROM THE FAA AS A CLASS OF WORKER ENGAGED IN FOREIGN OR INTERSTATE COMMERCE. .......... 7

B. THE ARBITRATION AGREEMENT IS UNENFORCEABLE BECAUSE DEFENDANTS HAVE NOT DEMONSTRATED THAT PLAINTIFF IS A PARTY TO THE AGREEMENT. .......... 9

C. THE ARBITRATION AGREEMENT DOES NOT COVER PAGA ACTIONS; PLAINTIFF CANNOT BE BOUND TO TERMS NOT AGREED UPON. .......... 11

D. PLAINTIFF MAY STILL PURSUE A REPRESENTATIVE ACTION, DESPITE THE SUPREME COURT'S DECISION IN *VIKING*. .......... 12

*1. California courts have faithfully applied Kim and deemed plaintiffs who have no individual PAGA claim to still have statutory standing* .......... 14

*2. California courts have always viewed PAGA plaintiffs as having no individual claim, and yet have permitted those plaintiffs to litigate representative PAGA claims in court.* .......... *15*

E. ACTIONS PENDING BEFORE THE CALIFORNIA SUPREME COURT AND THE PETITION FOR REHEARING IN *VIKING* FAVOR A STAY OF THE MOTION. .......... 16

IV. CONCLUSION .......... 16




MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA
90266

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........ 13

*Baltimore & Ohio Southwestern R. Co. v. Burtch*,
263 U.S. 540 (1924) ........ 9

*Canela v. Costco Wholesale Corp.*,
971 F.3d 845 (9th Cir. 2020) ........ 16

*Dean Witter Reynolds v. Byrd*,
470 U.S. 213 (1985) ........ 10

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 10, 12

*Gulf Oil Corp. v. Copp Paving Co.*,
419 U.S. 186 (1974) ........ 9

*Herb v. Pitcairn*,
324 U.S. 117 (1945) ........ 14

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019) ........ 12

*Newton v. American Debt Services, Inc.*,
854 F.Supp.2d 712 (N.D. Cal. 2012) ........ 11

*Smith v. Rent-A-Ctr., Inc.*,
WL 1294443 (E.D. Cal. Mar. 21, 2019) ........ 11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ........ 12

*Sw. Airlines Co. v. Saxon*,
142 S. Ct. 1783 (2022) ........ 7, 9





MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

*Taft v. Henley Enterprises, Inc.*,
2016 WL 9448485 (C.D. Cal. Mar. 2, 2016)....................12

*Tagliabue v. J.C. Penney Corp., Inc.*,
2015 WL 8780577 (E.D. Cal. Dec. 15, 2015)....................11

*United States v. American Building Maintenance Industries*,
422 U.S. 271 (1975)....................9

*Viking River Cruises, Inc. v. Moriana*,
142 S. Ct. 1906 (2022)....................6, 14

**State Cases**

*Adolph v. Uber Techs., Inc.*,
2022 WL 1073583 (Cal. Ct. App. Apr. 11, 2022)....................16

*Crestwood Behav. Health, Inc. v. Superior Ct. of Alameda Cnty.*,
(2021) 60 Cal. App. 5th 1069....................15

*Espejo v. S. California Permanente Med. Grp.*,
246 Cal. App. 4th 1047 (2016)....................9,11

*Hutcheson v. Superior Court*,
(2022) 74 Cal.App.5th 932....................14

*Johnson v. Maxim Healthcare Servs., Inc.*,
(2021) 66 Cal. App. 5th 924....................14

*Kim v. Reins*,
9 Cal.5th 73 (2020)....................6

*Provost v. YourMechanic, Inc.*,
(2020) 55 Cal.App.5th 982....................15

*Ruiz v. Moss Bros. Auto Grp.*,
232 Cal. App. 4th 836 (2014)....................10

*Zuniga v. Alexandria Care Ctr., LLC*,
(2021) 67 Cal.App.5th 871....................14, 15



MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

**Federal Statutes**

9 U.S.C. § 1 ........ 7

15 U.S.C. § 7001 ........ 10

**State Statutes**

California Civil Code § 1633.9(a) ........ 9

California Labor Code § 2698 ........ 7

Labor Code § 2699(c) ........ 13

**Federal Rules**

Rule 45 of the Rules of the Supreme Court of the United States ........ 16



MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

## I. INTRODUCTION

Defendants' Motion to Compel Arbitration ("Motion") should be denied in its entirety because plaintiff Danny Lopez ("Plaintiff") worked for Defendants as a field technician in the fuel department and as such "engaged in foreign or interstate commerce" and, thus, was exempt from Federal Arbitration Act's ("FAA") coverage, pursuant to *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022). Additionally, the "Agreement To Be Bound By Alternative Dispute Resolution Policy" and corresponding "Menzies Aviation Alternative Dispute Resolution Policy" (collectively, the "Arbitration Agreement" or "Agreement") purportedly signed by Plaintiff is otherwise uninforceable. Plaintiff has no recollection of electronically signing the Agreement and Defendants provide no evidence to authenticate Plaintiff's purported signature to the Agreement.

In the event that the Court finds the Agreement is enforceable, Defendants' Motion still fails. First, the Agreement makes no mention whatsoever of PAGA or any claim by employees acting in the capacity of a private attorney general. Second, *Viking River Cruises, Inc. v. Moriana*, the recent Supreme Court case upon which Defendants' entire Motion rests, merely held that California's anti-waiver rule for claims under PAGA is preempted only "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1924 (2022). The question of whether an "aggrieved employee" under PAGA is stripped of statutory standing to pursue "non-individual" PAGA claims after being compelled to arbitrate the "individual" portion of the PAGA action is an issue dictated by state courts' interpretation of statutory standing under state law, which is binding on federal courts. The fact that an aggrieved employee may be required to pursue the LWDA's claims for civil penalties in two forums does not transform her from an aggrieved employee with PAGA standing into a member of the general public with no statutory rights, under the California Supreme Court's reasoning in *Kim v. Reins* 9 Cal.5th 73



MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA
90266

(2020). Furthermore, On July 6, 2022, a petition for rehearing was filed with the Supreme Court, accordingly, the opinions of Supreme Court have no force and effect pending resolution of the rehearing. The California Supreme Court has also granted a petition for review in a case expected to clarify and resolve tension between state and federal law in the wake of *Viking River*, that may provide dispositive to issues that would decide Defendants' motion.

Accordingly, the Court should deny Defendants' Motion in its entirety.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by Defendants as a field technician in the fueling department at Los Angeles International Airport from on or about December 2007 to on or about April 2021. Declaration of Danny Lopez ("Lopez Declaration") ¶ 3. Among Plaintiff's duties as a field technician in the fueling department, he physically added fuel to both passenger and cargo airplanes involved in both foreign and domestic interstate travel. *Id*. During the course of Plaintiff's employment, he has no recollection of signing any agreement to arbitrate with Defendants. *Id*. ¶ 4. Plaintiff does not recall seeing an agreement to arbitrate during his employment with Defendants and is not certain as to what an agreement to arbitrate is. *Id*. ¶ 5. On July 21, 2021, Plaintiff filed a complaint against Defendants in Los Angeles County Superior Court, alleging a single cause of action for penalties under the California Private Attorneys General Act of 2004, California Labor Code § 2698, *et seq*. ("PAGA").

## III. ARGUMENT

### A. As a Fuel Technician, Plaintiff is Exempt from the FAA as a Class of Worker Engaged in Foreign or Interstate Commerce.

Section 1 of the FAA excludes from the Act's coverage: "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Recently clarified the boundaries of what constitutes "any other class of workers engaged in foreign or





MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

interstate commerce." *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022). In *Saxon*, the Court determined that "airplane cargo loaders plainly do perform 'activities within the flow of interstate commerce' when they handle goods traveling in interstate and foreign commerce, either to load them for air travel or to unload them when they arrive." *Id*. at 1792, citing *Baltimore & Ohio Southwestern R. Co. v. Burtch*, 263 U.S. 540, 544 (1924). Therefore, cargo loaders fell within the exemption of section 1 of the FAA. *Id*. In reaching its decision, the Court analyzed what occupations involved a sufficient nexus to interstate commerce so as to be included in the exemption. *Id*. Occupations too far removed could not qualify. For example, companies that sold asphalt to companies that then paved roads involved in interstate commerce did not qualify. *Id*., citing *Gulf Oil Corp. v. Copp Paving Co*., 419 U.S. 186 (1974). Likewise, janitorial services for the offices of a company involved in interstate commerce also did not qualify. Id. citing, *United States v. American Building Maintenance Industries*, 422 U.S. 271 (1975). The Court statutory context to clarify the exemption:

> The first sentence of § 1 of the FAA defines exempted "maritime transactions" to include, among other things, "agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any *other* matters in foreign commerce." (Emphasis added.) The use of "other" in the catchall provision indicates that Congress considered the preceding items to be "matters in foreign commerce." And agreements related to the enumerated "matte[r] in foreign commerce" of "wharfage," to take one example, included agreements for mere access to a wharf—which is simply a cargo-loading facility. […] It stands to reason, then, that if payments to access a cargo-loading facility relate to a "matte[r] in foreign commerce," then an individual who actually loads cargo on foreign-bound ships docked along a wharf is himself engaged in such commerce. Likewise, any class of workers that loads or unloads cargo on or off airplanes bound for a different State or country is "engaged in foreign or interstate commerce."

*Id*. at 1790. It is evident from the Court's analysis that fuel technicians involved in fueling airplanes involved in interstate commerce would have a sufficient nexus to the interstate transport of goods so as to be included within the section 1 exemption. As a field technician in the fueling department, Plaintiff physically added fuel to both passenger and cargo airplanes involved in both foreign and domestic interstate travel. Lopez Decl., ¶ 3. Fueling a vessel is tantamount to furnishing or supplying vessels



MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA
90266

and, accordingly, field technicians in the fuel department are exempt from the FAA.

**B. The Arbitration Agreement is Unenforceable Because Defendants Have Not Demonstrated That Plaintiff is a Party to the Agreement.**

Should the Court not deem Plaintiff exempt from the FAA, Defendants' motion still fails because the Defendants cannot demonstrate that Plaintiff signed the agreement. The FAA does not give a district court discretion in determining whether to compel arbitration; instead it "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been *signed*." *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis added). Courts apply ordinary state law principles of contract interpretation when deciding whether the parties agreed to arbitrate certain disputes. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, California contract principles must be applied to this Motion.

A defendant may meet its "initial burden to show an agreement to arbitrate" merely "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature" to the motion to compel arbitration. *Espejo v. S. California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). Once a plaintiff "challenge[s] the validity of that signature in his opposition," a defendant is "then required to establish by a preponderance of the evidence that the signature [is] authentic." *Id*.

The California Civil Code governs the authentication of electronic signatures and provides that "an electronic signature may be attributed to a person if it was the act of the person." Cal. Civ. Code § 1633.9(a). "The "act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id*. Where a purported signatory to an arbitration agreement does not recall electronically signing the agreement, the mere fact that the agreement includes an electronic signature in that person's name, and a data and time stamp for the





MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

signature, is insufficient to support a finding that the electronic signature was in fact 'the act of'" the purported signatory. *Ruiz v. Moss Bros. Auto Grp*., 232 Cal. App. 4th 836, 844 (2014). "[T]he burden of authenticating an electronic signature is not great." Id. at 844-845, citing *Newton v. American Debt Services, Inc*. 854 F.Supp.2d 712, 731–732 (N.D. Cal. 2012) (electronic signature on arbitration agreement proved to be the plaintiff's signature because it was made using DocuSign, a company used to electronically sign documents in compliance with the federal Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 et seq.), and the process DocuSign used to verify the plaintiff's electronic signature was explained). See also, *Smith v. Rent-A-Ctr., Inc*., No. 118CV01351LJOJLT, 2019 WL 1294443 (E.D. Cal. Mar. 21, 2019) at *3 ("mere use of" password within Defendant's employment application and onboarding websites insufficient to authenticate signature absent evidence of the adequacy of procedures to ensure the signatories identity).

Defendants summarily state that "Plaintiff signed the Arbitration Agreement on June 28, 2019." Motion at 9. In support of this contention, Defendants cite to the Declaration of Talin Bazerkanian ("Bazerkanian Decl."). *Id*. However, the declaration is equally conclusory in its assertion that Plaintiff "executed his written assent to be by bound by the ADR Policy" and provides no information that would serve to authenticate Plaintiff's signature. Dkt. 29-2, Bazerkanian Decl. at ¶ 4. Defendants only provide a copy of the Agreement and a separate single page document with Plaintiff's name printed at the top and a column titled "Status" with the entry "Accepted" below it, and a time and date entered in the next column. This is a manifestly insufficient showing to meet Defendants burden to demonstrate by a preponderance of the evidence that Plaintiff is a signatory to the Agreement. It is the "the *content* of such declarations, rather than their mere existence, [that] is determinative for clearing the authentication threshold [of an electronic signature to an arbitration agreement]. *Tagliabue v. J.C. Penney Corp., Inc*., No. 1:15-CV-01443-SAB, 2015 WL 8780577 at *3 (E.D. Cal. Dec. 15, 2015). In *Tagliabue*,





MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

authentication was supported in part by declarations of two senior human resource managers who detailed 20 discrete steps that a new hire had to follow and complete in order, the arbitration agreement being the tenth step, wherein the new hire could not proceed to the next step until all previous steps were completed. *Id*. See also, *Espejo v. S. California Permanente Med. Grp*., 246 Cal. App. 4th 1047, 1062 (2016) (electronic signature to arbitration agreement deemed authenticated where defendant detailed "security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement"); *Taft v. Henley Enterprises, Inc*., No. SACV151658JLSJCGX, 2016 WL 9448485 at *3 (C.D. Cal. Mar. 2, 2016) (electronic signature to arbitration agreement deemed authenticated where defendant detailed discrete steps of online onboarding, including an "audit trail [that] documents the steps that [the plaintiff] took in her onboarding process in reverse chronological order" to demonstrate she electronically reviewed and signed the arbitration agreement.).

**C. The Arbitration Agreement Does Not Cover PAGA Actions; Plaintiff Cannot be Bound to Terms Not Agreed Upon.**

In the event the Court finds that the Plaintiff is a signatory to the Agreement and that the Agreement is enforceable, Plaintiff's PAGA claims cannot be compelled to arbitration because the Agreement does not include a PAGA waiver or otherwise prohibit Plaintiff from bringing a claim under the PAGA. The most basic corollary of the principle that arbitration is a matter of consent is that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). This means that parties cannot be coerced into arbitrating a claim, issue, or dispute "absent an affirmative 'contractual basis for concluding that the party agreed to do so.' " *Lamps Plus, Inc. v. Varela,* 139 S. Ct. 1407, 1416 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 684 (2010); see also





MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA
90266

*AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 347–348 (2011).

The Agreement only refers to a prohibition of class and collective actions. For example, the agreement states, "I also understand that this ADR Policy prohibits me from joining or participating in a class action or as a collective action representative, or otherwise consolidating a covered claim with the claims of others." Dkt. 29-2, Bazerkanian Decl., Exh. B at 7. Nowhere in the Agreement or the corresponding policy incorporated therein, do Defendants identify language referring to PAGA or to any type of private attorney general action. It stretches the boundaries of reason to claim that a prohibition on class and collective actions – where an employee is aggregating their claim for individual damages with other employees' claims for individual damages – would include a concomitant prohibition on actions where the plaintiff steps into the shoes of and acts as a proxy for the State to recover civil penalties.

Had Defendants wanted to prohibit employees from bringing PAGA actions, it could have specified as much in the language of the Agreement. In fact, this is precisely what the defendant did in *Viking Cruises*, the case that comprises the basis of Defendants' motion. In *Viking Cruises*, the arbitration agreement at issue "contained a 'Class Action Waiver' providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action." *Viking*, 142 S. Ct. at 1916 (emphasis added). Having failed to specify the PAGA or make any reference to private attorney general actions in the Agreement, Defendants cannot now bind Plaintiff after the fact to terms that were never contemplated.

**D. Plaintiff May Still Pursue a Representative Action, Despite the Supreme Court's Decision in *Viking*.**

Defendants' reliance on *Viking* to compel arbitration of Plaintiff's PAGA claims is unavailing. While the Supreme Court held that the plaintiff's individual PAGA claim should be sent to arbitration pursuant to her agreement, the Supreme





MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

Court reserved to California courts the final word regarding standing under PAGA: "The remaining question is what the lower courts should have done with Moriana's non-individual claims. Under our holding in this case, those claims may not be dismissed simply because they are 'representative.' *Iskanian's* rule remains valid to that extent." *Viking,* 142 S.Ct. at 1925.

This is underscored by Justice Sonia Sotomayor's concurring opinion, wherein she noted that, with respect to statutory standing under PAGA, "if this Court's understanding of state law is wrong, *California courts*, in an appropriate case, will have the last word." *Id.,* (conc. opn. of Sotomayor, J.) (emphasis added). The concurrence refers to a long-held standard that, in issues concerning interpretation of state statues, federal courts will defer to state court decisions. *See, e.g.*, *Herb v. Pitcairn* (1945) 324 U.S. 117, 125-26 ("This Court from the time of its foundation has adhered to the principle that it will not review judgments of state courts that rest on adequate and independent state grounds. . . . Our only power over state judgments is to correct them to the extent that they incorrectly adjudge federal rights.").

In *Viking*, the Supreme Court was never briefed on the issue of PAGA standing; rather, the arguments before the Supreme Court centered on the waiver of the right to bring a PAGA action. Thus, the Supreme Court's ruling centered on a misreading of a critical California precedent, *Kim v. Reins International California, Inc.* (2020) 9 Cal. 5th 73, 90, which the Supreme Court incorrectly read as stating an employee's separate dispute from a PAGA claim gives the employee standing that "is no different from a member of the general public, and PAGA does not allow such persons to maintain suit." *Viking,* 142 S.Ct. at 1925, referencing *Kim*, 9 Cal. 5th at 90.

However, the holding of *Kim* is, in fact, the opposite. *Kim* holds that standing under Labor Code section 2699(c) requires only that the plaintiff suffered a violation during employment, and no other requirement. In *Kim*, the plaintiff resolved her individual Labor Code claims in arbitration and the employer moved for summary





MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

judgment, arguing that plaintiff lacked standing to pursue her PAGA claim in court because she was no longer aggrieved. *Kim*, 9 Cal. 5th at 82. The California Supreme Court disagreed, concluding that the plaintiff did *not* lose standing under PAGA, even though her individual dispute was "pared away," because statutory standing has only two elements: the plaintiff must (1) be an employee, and (2) have suffered a violation of the Labor Code. *Id.* at 90-91. There is no other requirement necessary to have standing.

**1. California courts have faithfully applied *Kim* and deemed plaintiffs who have no individual PAGA claim to still have statutory standing.**

Courts have since interpreted *Kim* to require only those two elements referenced for standing under Labor Code section 2699, subdivision (c). *See Zuniga v. Alexandria Care Ctr., LLC* (2021) 67 Cal.App.5th 871, 882 (per "section 2699, subdivision (c)'s standing requirement" a PAGA plaintiff need only allege she had suffered an applicable Labor Code violation or must prove she suffered actual injury as a result of the violation."); *Hutcheson v. Superior Court* (2022) 74 Cal.App.5th 932, 939 (same).

For instance, in *Johnson v. Maxim Healthcare Servs., Inc.* (2021) 66 Cal. App. 5th 924, the Court of Appeal held that a plaintiff who could not recover his own penalties because they were time barred (and under *Viking* could not bring what is now an "individual PAGA claim") would be permitted to proceed with the now termed "non-individual PAGA claim." *Id.* at 929 ("the main issue posed by the parties on appeal is whether an employee, whose individual claim is time-barred, may still pursue a representative claim under PAGA. Under *Kim* . . . we conclude the answer is yes."). Thus, California courts permit a PAGA plaintiff with no individual PAGA claim to continue to pursue a case on a representative basis.



MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

**2. California courts have always viewed PAGA plaintiffs as having no individual claim, and yet have permitted those plaintiffs to litigate representative PAGA claims in court.**

The United States Supreme Court *created* an individual PAGA claim, presumably, only where a PAGA plaintiff has agreed to arbitrate her disputes on an individual basis. Before *Viking*, courts have treated PAGA plaintiffs' individual claims as simply non-existent, and yet they were still permitted to proceed with the PAGA claims on a representative basis. *See, e.g., Crestwood Behav. Health, Inc. v. Superior Ct. of Alameda Cnty.* (2021) 60 Cal. App. 5th 1069 (stating that a PAGA plaintiff "has no individual claim.").

The individual PAGA claim that the Supreme Court created allows plaintiffs, acting as the LWDA, to recoup penalties for violations they suffered. Courts have approved of the idea that a PAGA representative may have *no personal stake in the litigation* such that sufferance of a single violation is sufficient, recognizing that "[r]elief under PAGA is designed primarily to benefit the general public, not the party bringing the action." *Zuniga v. Alexandria Care Ctr., LLC* (2021) 67 Cal.App.5th 871, 881; *Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 996 ("The *Kim* court noted standing in such actions cannot be dependent on the maintenance of an individual claim because there is no claim for individual relief."). Further, the recovery a PAGA plaintiff receives is not restitution; it is simply *an incentive* to bring suit. *See Canela v. Costco Wholesale Corp.* (9th Cir. 2020) 971 F.3d 845, 852 (describing civil penalties allocated to aggrieved employees as an incentive to bring an enforcement suit, and not as restitution for harm suffered).

That PAGA claims be raised in the *same forum* is not a requirement the California Supreme Court has required for PAGA standing. The *Viking* conclusion that carving up the PAGA claim somehow converts an employee into a mere member of the general public finds no support in any California authority or the statute itself, and this Court has the opportunity to demonstrate that. Thus, Plaintiff still has



MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA
90266

standing to pursue the representative PAGA claim.

**E. Actions Pending Before the California Supreme Court and the Petition For Rehearing In *Viking* Favor a Stay of the Motion.**

On July 6, 2022, Moriana, the named plaintiff in *Viking* filed a petition for rehearing with the Supreme Court. Supreme Court Docket No. 20-1573 (July 6, 2022). Under Rule 45 of the Rules of the Supreme Court of the United States, the filing of a petition for rehearing "stays the mandate until disposition of the petition unless the Court orders otherwise." Therefore, the opinions issued by the United States Supreme Court on June 15, 2022 are not yet final. Furthermore, on July 20,2022, the California Supreme Court granted a petition for review in *Adolph v. Uber Techs., Inc.*, No. G059860, 2022 WL 1073583 (Cal. Ct. App. Apr. 11, 2022), review granted (July 20, 2022). In *Uber Technologies*, the California court of appeals held that PAGA claims are not arbitrable under California law. While the decision of the appellate court predates *Viking*, it is broadly expected that the California Supreme Court will utilize its review of *Uber Technologies* to clarify and resolve the tensions between state and federal law left open by the ruling in Viking. Given the potential of these concurrent developments to decide threshold and dispositive issues pertaining to Defendants' Motion, should the Court find merit in Defendants' Motion, Plaintiff respectfully requests the Court stay its decision to allow the parties to brief any developments in *Viking* and *Uber Technologies* germane to determination of the Motion.

**IV. CONCLUSION**

Based on the foregoing argument and authority, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel Arbitration or, in the alternative, that the Court stay its decision on the Motion to Compel Arbitration in light of the



MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266

petition for rehearing in *Viking* and the California Supreme Court granting petition for review in *Uber Technologies*.

DATED: July 29, 2022

Respectfully submitted,

**MATERN LAW GROUP, PC**

By: ______________________________

MATTHEW J. MATERN
MATTHEW W. GORDON
MAX N. SLOVES
Attorneys for Plaintiff Danny Lopez and other aggrieved employees



MATERN LAW GROUP
1230 ROSECRANS AVENUE
SUITE 200
MANHATTAN BEACH, CA 90266