CHRISTOPHER WARD, CA Bar No. 238777
   cward@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

KEVIN JACKSON, CA Bar No. 278169
   kjackson@foley.com
**FOLEY & LARDNER LLP**
11988 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2594
TELEPHONE: 858.847.6700
FACSIMILE: 858.792.6773

Attorneys for Defendants AIRCRAFT SERVICE INTERNATIONAL, INC. and MENZIES AVIATION (USA), INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANNY LOPEZ, individually, and on behalf of all other aggrieved employees,<br><br>               Plaintiff,<br><br>vs.<br><br>AIRCRAFT SERVICE INTERNATIONAL, INC., a corporation; AIR MENZIES INTERNATIONAL (USA), INC., a corporation; MENZIES AVIATION (USA), INC., a corporation; and DOES 1 through 50, inclusive,<br><br>               Defendants. | Case No. 2:21-cv-07108-DMG-Ex<br><br>**REPLY IN SUPPORT OF DEFENDANTS AIRCRAFT SERVICE INTERNATIONAL, INC.'S AND MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Date:    August 26, 2022<br>Time:   9:30 a.m.<br>Ctrm.:   8C, 8th floor<br>Judge:  Hon. Dolly M. Gee |

## I. INTRODUCTION

Defendants Aircraft Service International, Inc. and Menzies Aviation (USA), Inc.[1] (collectively, "Menzies") respectfully submit this Reply to Plaintiff's Danny Lopez's ("Plaintiff" or "Lopez") Opposition to Defendants' Motion to Compel Arbitration.

Plaintiff seeks to avoid his contractual obligation to submit his individual claims to arbitration based on a multitude of flawed legal arguments.  First, Plaintiff contends that because he "physically added fuel to both passenger and cargo airplanes involved in both foreign and domestic interstate travel," he is exempt from the Federal Arbitration Act ("FAA").  But Plaintiff's sweeping interpretation of the Supreme Court's recent decision in *Southwest Airlines Co. v. Saxon*, No. 21-309, 596 U.S. ___ (2022) is unsupported by the Court's reasoning.  Second, Plaintiff challenges the existence of the arbitration agreement because he "does not remember" signing it (which is fundamentally different than claiming that he did not, in fact, sign it), as though some lack of memory could excuse parties from the contracts they execute.  While Menzies unequivocally satisfied its burden to demonstrate the existence of an arbitration agreement, as a further nail in Plaintiff's "lack of memory" legal argument, it file a supplemental declaration concurrently with this reply to address Plaintiff's challenge—a step expressly authorized by the same authorities Plaintiff cites in his opposition.  *See Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016).  Finally, Plaintiff incredibly and brazenly asks this Court to simply ignore the Supreme Court's decision in *Viking River* because, in his view, the highest court in this country "misread" and "incorrectly read" California law.  Such arguments are hardly appropriate in the present venue, where the rule of *stare decisis* controls.  Plaintiff is bound by the law as it exists today, which requires him to honor his contractual obligations and submit his individual claims to arbitration.

///

---

[1] Named defendant "Air Menzies International (USA), Inc." is not an existent or proper entity and has no relationship to Plaintiff's employment with Menzies.  It has not been served nor responded to the Complaint and has no valid involvement in this case.

## II. ARGUMENT

### A. PLAINTIFF'S POSITION AS A FUELER DOES NOT EXEMPT HIM FROM THE FEDERAL ARBITRATION ACT

Plaintiff argues that because he "physically added fuel to both passenger and cargo airplanes involved in both foreign and domestic interstate travel," he is exempt from the Federal Arbitration Act. Plaintiff rests his argument upon an unfounded and overbroad application of the United States Supreme Court's recent *Saxon* decision. There, the Supreme Court found that Southwest Airlines could not enforce a mandatory arbitration agreement against a ramp agent supervisor's wage and hour class and collective action. The Supreme Court found the FAA's § 1 exemption of "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"[2] precluded Southwest from enforcing individual-only arbitration of an FLSA overtime case brought by a ramp agent supervisor. The central reasoning for this decision is that because the plaintiff frequently (even as a supervisor) loads and unloads "*cargo* on and off planes traveling in interstate commerce," she is "as a practical matter, part of the interstate transportation of *goods*." *Id.*, Slip Op. at 5 (emphasis supplied). At the same time however, the Supreme Court recognized "the answer will not always be so plain when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders." *Id.*, fn. 2.

Notwithstanding the potential ambiguities in the scope of *Saxon* vis-à-vis certain classifications of workers within the airline and ground handling industries, its application to fuelers is not ambiguous. Indeed, the opinion's language makes plain how lower courts should apply it the case to categories of workers – and why fueling employees are not part of that application scope. The opinion frequently and explicitly identifies "cargo" and "goods" moved in interstate commerce as the key connection to trigger the § 1 exemption, indicating at several points that "cargo" includes passenger baggage, airmail and freight/commercial cargo. *See id.*, Slip. Op. at 1-2. The opinion

---

[2] *See* 9 U.S.C. § 1 *et seq*.

also refers at multiple occasions to workers who load and unload "goods," at one point stating "any class of workers *directly* involved in transporting *goods* across state or international borders falls within § 1's exemption." *Id*., Slip Op. at 5 (emphasis supplied).

The opinion also suggests how courts should interpret the "directly" aspect of the foregoing statement. For example, the plaintiff had argued that because air transportation "as an industry" is engaged in interstate commerce, "airline employees" as a whole fall within the FAA exemption. *Saxon* explicitly rejects such an industry-wide approach because the relevant inquiry depends upon what the employee's work at the employer is, not what the employer's business is as a general matter. *Id*., Slip Op. at 3-4. Specifically then, the FAA's exemption does **not** apply to all employees who carry out an airlines "customary" work and therefore would not cover classifications with no "hands-on" connection to transporting **cargo and/or goods** in interstate cargo.

Two key interpretive points appear to arise from the foregoing language: (1) for the § 1 exemption to apply, the employee must have involvement in the process of transporting "cargo" or goods" on and off aircraft; and (2) the employee must have hands-on contact with the "cargo" and "goods" within the overall process of loading and unloading them from aircraft. **<u>Put very simply, jet fuel is not "cargo" or "goods."</u>** <u>As both simple logic and *Saxon*'s language indicates,</u>

the central feature of the intersection of "goods/cargo" and "interstate commerce" is that the goods/cargo go onto an aircraft for the *specific purpose* of moving them from Point A to Point B, and moving possession of them from someone at Point A to someone at Point B. Fuel does not satisfy this conceptual definition; a fueler does not load fuel on an aircraft to transport it from Point A to Point B – rather, it enables the aircraft to move other items (in other words, actual "cargo" and "goods") from Point A to Point B.

Given the Supreme Court's rejection of applying the FAA's exemption to all workers in the airline industry, coupled with the guiding principles regarding "cargo" and "direct" involvement in transporting good across state or international borders, Plaintiff's

attempt to latch onto *Saxon* and interpret it far more broadly than the Supreme Court's language allows must fail. Plaintiff's position as a fueler, much like a mechanic who performs maintenance work on the aircraft, is too far removed from the direct transportation of cargo to qualify for the exemption. As a result, he should be bound by his agreement to arbitrate.

### B.   MENZIES HAS ESTABLISHED THE EXISTENCE OF AN ARBITRATION AGREEMENT

Plaintiff weakly contends that an arbitration agreement somehow does not exist despite the clear, objective evidence Menzies has provided showing that in fact one does. Notably, he does *not* deny that he signed an arbitration agreement. He does *not* claim that the electronic signature on the arbitration agreement is not his. Instead, he simply has "no recollection" of signing an arbitration agreement and expects the Court will excuse him from his agreement due to his lack of memory, as though parties should somehow be free to escape the contractual commitments they undertake whenever they have forgotten undertaking them in the first place. This is absurd and the Court should reject such arguments outright.

But Menzies is also happy to respond to absurd legal argument with additional factual clarity. Plaintiff correctly notes that a defendant may meet its "initial burden to show an agreement to arbitrate" merely "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature" to the motion to compel arbitration. *Espejo,* 246 Cal. App. 4th at 1060. Once a plaintiff "challenge[s] the validity of that signature in his opposition," a defendant is "then required to establish by a preponderance of the evidence that the signature [is] authentic." *Id.* Accordingly, Menzies unequivocally satisfied its initial burden to demonstrate the existence of an arbitration agreement. In the event the Court construes Plaintiff's failure to recall signing the agreement as a legitimate "challenge" to the authenticity of the arbitration agreement, Menzies may file, and has filed, a supplemental declaration concurrently with this reply to debunk Plaintiff's "challenge." *See id.* ("As previously noted, the issue of timeliness

turns on whether defendants were required to authenticate Espejo's signature on the DRP as part of their initial petition to compel arbitration. Defendants contend they were not required to introduce such evidence until the authenticity of the document was challenged. We agree").

Concurrently with this reply brief, Menzies files a supplemental declaration from its Vice President of Human Resources who has worked for Menzies for 30 years and supervised LAX Human Resources matters for over a decade.  Her supplemental declaration details the information security procedures in place to verify that the name and date stamp on the arbitration agreement reflects "the act of" Plaintiff.  *See* Supplemental Declaration of Talin Bazerkanian, ¶¶4-5.  This is precisely the evidence that courts have held to be sufficient to establish the existence of an arbitration agreement.  *See id.* at 1062 (electronic signature to arbitration agreement deemed authenticated where defendant detailed "security precautions regarding transmission and use of an applicant's unique user name and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement).  Accordingly, Menzies has established the existence of an arbitration agreement and Plaintiff should be compelled to honor his agreement.

### C.    THE COURT SHOULD REJECT PLAINTIFF'S INVITATION TO IGNORE SUPREME COURT PRECEDENT

Plaintiff also incredibly argues that this Court can and should simply ignore the Supreme Court's decision in *Viking River* because the highest court in the nation supposedly "misread" California law and relied on an "incorrect reading" in reaching its decision.  *See* Opposition, p. 13.  Of course, *Viking River* is binding precedent and Plaintiff has no legal basis to claim this federal court can simply ignore it or decline to follow it.  Plaintiff proceeds to argue that "actions pending before the California Supreme Court and the Petition for Rehearing in *Viking* favor a stay" of Menzies' motion to compel arbitration.  *See* Opposition, p. 16.  But this Court has already declined to stay this case – when Menzies asked for one – on exactly these grounds.  Specifically, when

Menzies moved to stay this action pending the Supreme Court's decision in *Viking River*, Plaintiff opposed it, and the Court agreed that a stay was not appropriate.[3]  Now on the other side of that same equation, Plaintiff now believes a stay is appropriate simply because he disagrees with the Supreme Court's decision in *Viking River*.  Plaintiff's inconsistent approach to the same issue underscores that he is not guided by a principled application of existing law.  Instead, he wants to have it both ways when it suits his interests.

Plaintiff's argument that the arbitration agreement does not contain an express "PAGA waiver" is inapposite in light of the holding in *Viking River*, which did *not* turn on whether an express PAGA waiver existed.[4]  Instead, it centered on claim joinder and whether PAGA provides for an "individual" and "non-individual" claim, and what happens to the non-individual portion of the claim once an individual is required to submit his claim to arbitration – as Plaintiff has committed to doing in this matter.  *Viking River* requires enforcement of the arbitration agreement insofar as Plaintiff agreed that he would submit **all claims** arising out of his employment, including those brought under the California Labor Code (which encompasses PAGA claims) to final and binding arbitration.  *Viking River* also instructs that once Plaintiff has submitted his individual PAGA claim to arbitration, he loses standing to bring "non-individual" PAGA claims in a court action.  Therefore, Plaintiff is required to arbitrate his claims on an individual basis, and "the correct course is to dismiss [his] remaining [non-individual] claims." *Viking River,* at 21.  Inconvenient though that may be for Plaintiff, that is now the binding law for federal courts to follow, and Plaintiff's request that this Court simply ignore such binding precedent speaks to the weakness of his contentions.

///

///

---

[3] Indeed, given this Court concluded a stay was not appropriate at the time the Court and the Parties did not know how *Viking River* would turn out, it is all the more inappropriate now given that the Court and Parties know how the Supreme Court ruled.

[4] Notably, Plaintiff ignores the fact that the arbitration agreement expressly states that Plaintiff cannot "consolidat[e] a covered claim with the claims of others."

## III. CONCLUSION

Based on the foregoing and the arguments set forth in its initial motion to compel arbitration, Menzies respectfully requests that this Court enforce the Plaintiff's agreement to be bound by the Arbitration Agreement, require him to proceed with his individual PAGA claim through final and binding arbitration pursuant to his agreement, and dismiss his "non-individual" PAGA claims.

DATED:  August 12, 2022

**FOLEY & LARDNER LLP**
Christopher Ward
Kevin Jackson

/s/ Christopher Ward
Christopher Ward
Attorneys for Defendants AIRCRAFT SERVICE INTERNATIONAL, INC. and MENZIES AVIATION (USA), INC.